UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

November 1, 2021

LETTER TO COUNSEL:

    RE:   *Caitlin C. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
            Civil No. TJS-20-2739

Dear Counsel:

    On September 22, 2020, Plaintiff Caitlin C. petitioned this Court to review the Social Security Administration's final decision to deny her claim for supplemental security income ("SSI"). ECF No. 1. The parties have filed cross-motions for summary judgment. ECF Nos. 12 & 13. These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Acting Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

    Caitlin C. filed her application for SSI on December 29, 2016. Tr. 22. She alleged a disability onset date of April 16, 2015. *Id.* Her application was denied initially and upon reconsideration. *Id.* Caitlin C. requested an administrative hearing and a hearing was held on March 19, 2019, before an Administrative Law Judge ("ALJ"). Tr. 38-56. In a written decision dated June 26, 2019, the ALJ found that Caitlin C. was not disabled under the Social Security Act. Tr. 22-33. The Appeals Council denied Caitlin C.'s request for review, making the ALJ's decision the final, reviewable decision of the agency. Tr. 1-6.

    The ALJ evaluated Caitlin C.'s claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. At step one, the ALJ found that Caitlin C. had not engaged in substantial gainful activity since December 29, 2016, the application date. Tr. 24. At step two, the ALJ found that Caitlin C. suffered from the following severe impairments: major depressive disorder, generalized anxiety disorder, obsessive-compulsive disorder, and a history of obesity. *Id.* At step three, the ALJ found Caitlin C.'s impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404,

---

[1] This case was originally assigned to Judge Boardman. On June 30, 2021, it was reassigned to Judge Coulson. On September 30, 2021, it was reassigned to me.

Subpart P, App. 1 ("Listings"). Tr. 25-27. The ALJ determined that Caitlin C. retained the residual functional capacity ("RFC") to:

> perform less than a full range of light work as defined in 20 CFR 416.967(b). The claimant has to avoid climbing ladders, ropes and scaffolds, but she can perform other postural movements frequently. The claimant is limited to simple, routine and repetitive tasks with minimal or less than occasional changes in the routine, and to work that allows her to avoid fast-paced tasks such as assembly line jobs involving production quotas. Also, the claimant is limited to occasional, brief and superficial interaction with the public and co-workers. The claimant has to avoid working around hazards such as moving, dangerous machinery and unprotected heights.

Tr. 27.

At step four, the ALJ determined that Caitlin C. has no past relevant work. Tr. 31. At step five, relying on testimony provided by a vocational expert ("VE"), and considering the claimant's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Caitlin C. can perform, including linen sorter, merchandise marker, laminator, and sorter. Tr. 32. Accordingly, the ALJ found that Caitlin C. was not disabled under the Social Security Act. Tr. 32-33.

Caitlin C. argues that the ALJ made a number of errors that warrant remand, which the Court summarizes as follows: (1) the ALJ failed to properly evaluate the opinions of Dr. Rita Clark, Dr. Justin Anderson, and Dr. Niru Jani; (2) the ALJ failed to explain how he determined that the claimant could "maintain[] concentration, attention, and pace up to 85 percent of the workday"; (3) the ALJ failed to provide a narrative discussion stating how the evidence of record supported each conclusion; (4) the ALJ failed to perform a function-by-function assessment of the claimant's work-related abilities; (5) the ALJ failed to account for the claimant's moderate limitations in concentration, persistence, and pace; and (6) the ALJ failed to properly evaluate the claimant's subjective complaints.

Caitlin C.'s first argument is that the ALJ improperly evaluated the opinions of three medical sources. She argues that the ALJ improperly considered evidence submitted by Dr. Rita Clark in response to medical interrogatories. Dr. Clark opined that the claimant requires "a simple, structured job with no time or production pressures with little public contact." Tr. 576. The ALJ gave "greater weight" to the opinion of Dr. Clark than the opinions of other mental health professionals (Dr. Dziedzic and Dr. Jani), and adopted the portion of the opinion that limited the claimant to "a simple structured job" with "no time pressures and with little public contact." Tr. 31. Caitlin C. argues that the ALJ improperly omitted the portion of Dr. Clark's opinion that restricted her from performing work involving "production pressures." ECF No. 12-1 at 6. The Court rejects this argument. The ALJ's RFC and hypothetical to the VE limited the claimant to performing "simple, routine and repetitive tasks" and to "work that allows her to avoid fast-paced tasks such as assembly line jobs involving production quotas." Tr. 31. This language adequately accounts for the limitations that Dr. Clark described in her opinion and that the ALJ found to be persuasive. The ALJ was not required to parrot the exact words of Dr. Clark's opinion.

Next, Caitlin C. argues that the ALJ failed to properly evaluate the opinion of Dr. Justin Anderson, the consultative psychological examiner. ECF No. 12-1 at 6-8. Dr. Anderson reported that Caitlin C. could "[s]ustain attention for extended periods of two hour segments for simple and detailed tasks, completing a typical workday 80% of the time at a normal pace." Tr. 342. He also opined that Caitlin C. had a "moderate to marked limitation in her ability to interact socially, and moderate to marked limitation in her ability to adapt to the routine stressors/changes of a general work environment," and that she could have occasional periods of decompensation. Tr. 343. The ALJ gave "partial weight" to Dr. Anderson's opinion, accepting the portion of the opinion that Caitlin C. "could sustain attention and concentration for simple work in a low public contact setting," but also finding that Caitlin C. could only perform work that was not fast paced and that limits her contact with co-workers (in addition to the public). Tr. 31. The ALJ did not mention Dr. Anderson's opinion that limited Caitlin C. to completing a typical workday only 80% of the time at a normal pace, or that she had at least moderate limitations in her abilities to interact socially and adapt to the routine stressors and changes in a work environment, or that she could have occasional periods of decompensation. And to the extent that the ALJ accepted Dr. Anderson's opinion as to these limitations, Caitlin C. argues, he did not account for them in the RFC determination or in the hypotheticals to the VE. Caitlin C. argues that the ALJ's failure to account for every one of Dr. Anderson's opinions makes it "impossible to determine" whether the ALJ's evaluation of the opinion is supported by substantial evidence and in compliance with the governing legal standards. ECF No. 12-1 at 8. The Court disagrees. A review of the ALJ's decision makes it quite apparent which portions of Dr. Anderson's opinion the ALJ adopted: that Caitlin C. was limited to performing work with minimal changes in the workplace and limited interaction with coworkers and the public. These are the restrictions that the ALJ discussed in connection with Dr. Anderson's opinion, which were also incorporated into the RFC. And while the ALJ did not explicitly address Dr. Anderson's "80%" benchmark, he did limit Caitlin C. to performing simple, routine, and repetitive work, with minimal changes to the work routine, with no fast-paced tasks, and only occasional interaction with coworkers and the public. The ALJ found that these limitations were sufficient to accommodate Caitlin C.'s difficulties, and his decision in this regard is supported by substantial evidence. The ALJ did not address every single part of Dr. Anderson's opinion, but "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). The ALJ's explanation of his evaluation of Dr. Anderson's opinion is sufficient to allow this Court to conduct its review. Caitlin C.'s argument on this point is no basis for remand.

Caitlin C. argues that the ALJ did not properly evaluate the opinion Dr. Niru Jani. ECF No. 12-1 at 8. Because Caitlin C.'s application was filed before March 27, 2017, the ALJ was required to apply the "treating physician rule" when considering Dr. Jani's opinion.

> Section 404.1527(c)(2) sets out two rules an ALJ must follow when evaluating a medical opinion from a treating physician. First, it establishes the "treating physician rule," under which the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also, e.g.*, *Arakas v. Comm'r of SSA*, 983 F.3d 83, 106-07 (4th Cir. 2020) (citing Section 404.1527(c)(2) and applying the treating physician rule); *Brown v. Comm'r of SSA*, 873 F.3d 251, 255-56 (4th Cir. 2017) (same). Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine

the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(2)(i)–(6).

*Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384-85 (4th Cir. 2021).

The ALJ properly evaluated Dr. Jani's opinion. The ALJ discussed Dr. Jani's Mental Residual Functional Capacity Assessment (Tr. 278-92), which indicates that Dr. Jani had been treating Caitlin C. on a weekly basis for about five years (Tr. 278). The ALJ identified Dr. Jani's area of expertise (psychiatry) and summarized Dr. Jani's opinions that Caitlin C. had a marked limitation in the ability to remember locations and work-like procedures, marked limitations in concentration, persistence, and pace, an extreme limitation in the ability to maintain a schedule and attendance, an extreme limitation in the ability to work with others, an extreme limitation in the ability to complete a normal workday and workweek, and marked to extreme limitations in social functioning. Tr. 31. The ALJ gave Dr. Jani's opinions less than controlling weight because they were not supported by other evidence in the record, including the claimant's mental status examinations and the findings of the evaluating psychologist. *Id.* In addition, the ALJ noted that Dr. Jani's "opinions appear to be based on some of the claimant's unsubstantiated subjective complaints." *Id.* Elsewhere in the decision, the ALJ summarized the claimant's treatment history at Dr. Jani's office, Community Behavioral Health. Tr. 29-30. According to the ALJ's summary, these records demonstrate that the claimant underwent mostly conservative treatment. Tr. 29. Medication and various at-home exercises helped to modestly improve the claimant's symptoms. *Id.* Considering this evidence, as well as other evidence that the ALJ cited, the ALJ's decision provides sufficient information for this Court to conduct its review and determine that the ALJ's evaluation of Dr. Jani's opinion complied with the governing regulations. Caitlin C.'s argument to the contrary is without merit.

Caitlin C. presents two arguments regarding the ALJ's consideration of her limitations with maintaining concentration, persistence, and pace. First, she argues that the ALJ failed to explain how he determined that she could "maintain[] concentration, attention, and pace up to 85 percent of the workday." ECF No. 12-1 at 13. Second, she argues that the ALJ did not account for her moderate limitations in concentration, persistence, and pace, as required by *Mascio*, 780 F.3d 632. Neither of these arguments has merit. The ALJ found that Caitlin C. has moderate limitations in concentrating, persisting, and maintaining pace. Tr. 26. In support of this finding, the ALJ cited evidence of Caitlin C.'s reports of distractibility, racing thoughts, and poor concentration and attention. *Id.* The ALJ also noted the opinion of Dr. Dziedzic that Caitlin C.'s obsessive-compulsive disorder symptoms interfere with her ability to concentrate and complete tasks. *Id.* At the same time, the ALJ explained that "[t]here is no convincing evidence of an inability to sustain concentration for the completion of simple, repetitive tasks," noting that Caitlin C. "confirmed that she performs certain actions repeatedly due to her OCD." Tr. 26.

It is apparent that the ALJ considered Caitlin C.'s moderate limitations in maintaining concentration, persistence, and pace in formulating the RFC. By limiting the claimant to "simple, routine and repetitive tasks," work that has "minimal or less than occasional changes in the routine," and work that does not require her to perform "fast-paced tasks such as assembly line jobs involving production quotas," the ALJ delineated functional limitations that do not exceed Caitlin C.'s abilities. Unlike the cases that Caitlin C. relies on, the ALJ in this case explained why he found the claimant to have moderate limitations in concentration, persistence, and pace, and explained how these limitations were accounted for in the RFC. The ALJ's decision complies with *Mascio*.

Caitlin C.'s next arguments are that the ALJ failed to provide a narrative discussion stating how the evidence of record supported each conclusion, and that the ALJ failed to perform a function-by-function assessment of the claimant's work-related abilities. ECF No. 12-1 at 15. Every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by a narrative discussion describing the evidence that supports it. *Dowling*, 986 F.3d at 387. An ALJ must consider all of a claimant's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019) (internal quotation marks and citation omitted). In doing so, the ALJ must provide "a narrative discussion describing how the evidence supports each conclusion . . . ." SSR 96-8P, 1996 WL 374184 at *7 (July 2, 1996). Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC. *Id.*; *Thomas*, 916 F.3d at 311 ("Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion."). An ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion. *Reid*, 769 F.3d at 865.

The ALJ's decision contains a detailed discussion of the evidence of record, including treatment notes, opinions from treating and consulting medical sources, and statements from the claimant and her mother. The ALJ considered this evidence and constructed an RFC that captured Caitlin C.'s functional abilities. In doing so, the ALJ explained the weight that he gave to the evidence and what the evidence said about Caitlin C.'s ability to perform work. The ALJ's analysis is adequate for the Court to conduct its review. Having considered the ALJ's decision, the Court finds that the ALJ's reasoning is sound, that the ALJ's findings are supported by substantial evidence, and that the ALJ complied with the governing legal standards. The Court rejects Caitlin C.'s arguments to the contrary.

Finally, Caitlin C. argues that the ALJ improperly evaluated her subjective complaints. ECF No. 12-1 at 20-23. In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); 20 C.F.R. § 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. *Id.* § 416.929(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. *Id.* § 416.929(c). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id*. To evaluate a claimant's statements, the ALJ must "consider all of the evidence in an individual's record when they evaluate

the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p, 2016 WL 1119029 (S.S.A. March 16, 2016). A claimant is entitled to rely exclusively on subjective evidence to prove the degree to which their symptoms affect their ability to work at the second step of the analysis. *Arakas*, 983 F.3d at 95-97.

The ALJ properly evaluated Caitlin C.'s subjective complaints. He did not, as the claimant argues, "erroneously require[] the Plaintiff to prove the type and degree of her subjective complaints by objective medical evidence." ECF No. 12-1 at 22-23. The ALJ considered the claimant's statements about her symptoms, the effectiveness of her medication and non-medication treatments for her symptoms, her activities of daily living, and her limited interactions with others; information about the claimant's education history (including her completion of high school, her attendance at the Peabody Conservatory, where she studied recording arts and piano performance, and her attendance at the University of Miami, where she studied electrical engineering); and evidence about the triggers that make her symptoms worse. Tr. 25-31. The ALJ did not limit his consideration to whether objective evidence supported the claimant's subjective statements; he considered all of the evidence in the record, as he was required to do. The claimant's argument to the contrary is unfounded.

For the reasons set forth herein, Caitlin C.'s Motion for Summary Judgment (ECF No. 12) will be **DENIED**, and the Acting Commissioner's Motion for Summary Judgment (ECF No. 13) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/
Timothy J. Sullivan
United States Magistrate Judge